No. 14616

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

THE STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

THOMAS DESS,

        Defendant and Appellant.

---

Appeal from:  District Court of the Eighth Judicial District,
              Honorable H. William Coder, Judge presiding.

Counsel of Record:

    For Appellant:

        Lang and Donovan, Great Falls, Montana
        Richard W. Lang argued, Great Falls, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Allen B. Chronister argued, Assistant Attorney General,
         Helena, Montana
        J. Fred Bourdeau, County Attorney, Great Falls,
         Montana
        Michael G. Barer argued, Deputy County Attorney, Great
         Falls, Montana

---

Submitted:  September 10, 1979

Decided:  OCT 31 1979

Filed:  OCT 31 1979

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendant appeals from a judgment of the District Court of the Eighth Judicial District, Cascade County, the Honorable H. William Coder presiding, finding him guilty of the crimes of misdemeanor criminal trespass, felony theft, and three counts of felony criminal mischief. The criminal trespass conviction related to appellant's allegedly unlawfully entering and remaining in the J & L Tire Company in Great Falls. The felony charges stemmed from appellant's alleged theft and destruction of property belonging to Bison Motor Company in Great Falls and the City of Great Falls.

At approximately 6:00 a.m. on January 19, 1978, two Great Falls police officers responded to a burglar alarm at the J & L Tire Company in Great Falls, Montana. On investigation, they discovered two individuals hiding behind the bathroom door in the tire company building. One of the individuals was appellant Thomas Dess. The police officers observed a leukemia poster lying on the floor of the shop area of the building with no money in it. The police officers arrested appellant and his companion.

Sometime in the early morning hours of the same day, a pickup truck was removed from the premises of Bison Motor Company, the Ford dealership in Great Falls. The truck was driven through the fence of the premises. In addition, the lightbars and antennas of two police cars on the Bison Motor Company lot were damaged. Great Falls police recovered the pickup truck later that day south of Great Falls. They found the pickup driven off the highway and stuck in some snow. The truck had been damaged as a result of being driven through the car lot fence.

At approximately 10:30 a.m. on January 19, while in custody in the Great Falls jail, appellant allegedly made a statement to Lt. James Cook confessing to participation in the theft of the pickup and the damaging of the police cars. Lou Ann Bush, a stenographer for the Great Falls Police Department, recorded the statement.

On February 3, 1978, the Cascade County attorney filed an information in District Court charging appellant with burglary, theft and criminal mischief. Appellant was arraigned on February 7 and entered pleas of not guilty to all charges. District Judge Truman G. Bradford set trial in the matter for March 28, 1978. On March 3, appellant was released from jail on bail. The trial date was continued to April 11, 1978, due to the illness of Judge Bradford. On April 11, Judge Bradford still being ill, Judge Coder accepted jurisdiction of the case. He later set a new trial date for July 10, 1978. On June 21, defense counsel Cameron Ferguson filed a motion for an order continuing the trial date because of his resignation as Cascade County public defender effective June 30, 1978, and requested that the attorney subsequently assigned to the case be given at least a month to become familiar with the case. Judge Coder entered an order resetting the trial for September 4, 1978. On July 27, the county attorney requested the trial be reset because September 4 was a legal holiday. Judge Coder set the trial for September 25, 1978, and trial was subsequently held on that date.

On September 19, 1978, a suppression hearing was held concerning the statement allegedly made by appellant on the morning of his arrest. Appellant testified that he did not recall talking with Lt. Cook, receiving his Miranda warning

from Lt. Cook, or making any statement concerning his activities prior to being arrested. On cross-examination, appellant exhibited a good recollection of other events that occurred on January 19, and stated a signature on a waiver of rights form looked like his signature. He consistently denied making a statement to Lt. Cook, however. The State called no witnesses at the suppression hearing. Based on appellant's testimony, Judge Coder, while expressing concern that nothing on the record supported the fact that appellant was given his Miranda warnings, found no credible evidence on the record to support appellant's position and denied his motion to suppress the statement. At trial, Ms. Bush read the statement into evidence over appellant's objection.

The following issues are raised on appeal:

1. Did the District Court err in denying appellant's motion to suppress his alleged confession and allowing the statement to be read into evidence at trial?

2. Was appellant denied his constitutional right to a speedy trial?

Addressing the issue of the suppression of the alleged confession, we find the District Court erroneously admitted appellant's statement for two reasons. First, the State failed to prove the voluntariness of appellant's confession at the suppression hearing by a preponderance of the evidence as required by prior case law. See State v. Grimestead (1979), ___ Mont. ___, 598 P.2d 198, 222, 36 St.Rep. 1245, 1250-51; State v. Smith (1974), 164 Mont. 334, 338, 523 P.2d 1395, 1397.

Looking to the record, there appears to be no evidence introduced at the suppression hearing that appellant voluntarily made the statement. The only witness at the hearing

was appellant. On direct examination he testified that he had no recollection of signing a waiver of his _Miranda_ rights or making a statement to Lt. Cook. On cross-examination the State established that appellant recalled many specific events that occurred the night and morning of his arrest and that the signature on a waiver of rights form looked like his signature. The State did not, however, introduce any evidence refuting appellant's testimony that he did not made a statement to Lt. Cook or receive his _Miranda_ warnings.

While the testimony introduced by the State tends to show that appellant was capable of making a voluntary statement, it does not show by a preponderance of the evidence that he made a voluntary statement as required by the case law. Even though the trial court's judgment at a suppression hearing will not normally be reversed on appeal, when the State fails to show that appellant was advised of his _Miranda_ rights, that appellant made the statement attributed to him, or any evidence other than appellant had the mental capacity to make a voluntary statement, a finding the State has carried its burden to prove voluntariness by a preponderance of the evidence is clearly against the weight of the evidence and must be overturned on appeal.

The second reason appellant's purported confession should not have been admitted is of the inadequacy of the _Miranda_ warning allegedly given appellant. The warning allegedly given appellant included the following language: "We have no way of giving you a lawyer, but one will be appointed for you, if and when you go to court."

A split of authority exists on the adequacy of a _Miranda_ warning containing this language. Several courts

-5-

have held warnings nearly identical to the one challenged here invalid. Commonwealth v. Johnson (1979), _____ Pa.Super. _____, 399 A.2d 111, 112; United States ex rel. Williams v. Twomey (7th Cir. 1972), 467 F.2d 1248, 1250; United States v. Garcia (9th Cir. 1970), 431 F.2d 134. In Williams the court reasoned:

> "We hold that the warning given here was not an 'effective and express explanation;' to the contrary, it was equivocal and ambiguous. In one breath appellant was informed that he had the right to appointed counsel during questioning. In the next breath, he was told that counsel could not be provided until later. In other words, the statement that no lawyer can be provided at the moment and can only be obtained if and when the accused reaches court substantially restricts the absolute right to counsel previously stated; it conveys the contradictory alternative message that an indigent is first entitled to counsel upon an appearance in court at some unknown, future time. The entire warning is, therefore, at best, misleading and confusing and at worst, constitutes a subtle temptation to the unsophisticated indigent accused to forego the right to counsel at this critical moment." 467 F.2d at 1250.

Other courts have upheld warnings very similar to the one given here. Wright v. State of North Carolina (4th Cir. 1973), 483 F.2d 405, 407, cert. denied, 415 U.S. 936 (1974); Massimo v. United States (2nd Cir. 1972), 463 F.2d 1171, 1174, cert. denied, 409 U.S. 1117; United States v. Lacy (5th Cir. 1971), 446 F.2d 511, 513. Those courts adopted the rationale that the only conclusion a defendant given the warning would be justified in reaching was that, ". . . since he was clearly entitled to have a lawyer present during the questioning and since no lawyer could be provided, he could not now be questioned." Massimo, 463 F.2d at 1174.

The holding that the warning was invalid is more consistent with Miranda and based on a better rationale than

the holding to the contrary. Miranda requires interrogators to be effective and express in explaining the right to appointed counsel to a defendant. Miranda v. Arizona (1966), 384 U.S. 436, 473, 86 S.Ct. 1602, 16 L.Ed.2d 694. Williams correctly points out that the language challenged here is neither effective nor express, but rather equivocal and ambiguous, informing a defendant of the right to appointed counsel in one breath and telling him counsel cannot be provided in the next. The rationale that a defendant would only be justified in reaching one conclusion based on the warning given here adopted by the courts holding the warning adequate under Miranda is unconvincing. The language of the warning is confusing, and several conclusions as to its meaning could be envisioned by a person presented with it.

We therefore find the Miranda warning given appellant defective and the District Court improperly admitted appellant's confession over his objection on this basis.

Having determined appellant's January 19 statement inadmissible, we must reverse appellant's conviction on the felony charges stemming from appellant's alleged theft of the pickup from Bison Motor and the damaging of the pickup and the two police cars. The confession undoubtedly weighed heavily in the minds of the jurors in finding appellant guilty of those offenses.

Concerning appellant's conviction for misdemeanor criminal trespass, however, we do not find reversal warranted. This Court will not reverse the District Court if an error by the District Court constitutes harmless error. State v. Rozzell (1971), 157 Mont. 443, 450-51, 486 P.2d 877, 881; State v. Straight (1959), 136 Mont. 255, 265, 347 P.2d 482, 488. When the error is federal constitutional error, as

with the improper admission of appellant's confession, the error cannot be considered harmless unless the court finds it harmless beyond a reasonable doubt. Chapman v. California (1967), 386 U.S. 18, 23-24, 87 S.Ct. 824, 17 L.Ed.2d 705. The United States Supreme Court has found harmless constitutional error when the inadmissible evidence was cumulative and other evidence overwhelmingly showed the defendant's guilt. Schneble v. Florida (1972), 405 U.S. 427, 430, 92 S.Ct. 1056, 31 L.Ed.2d 340; Harrington v. California (1969), 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284. That is the case here.

The portion of the confession relating to the criminal trespass charge merely places appellant inside the J & L Tire building when the police arrived. The testimony of both policemen who investigated the break-in places appellant in the building. We conclude the admission of appellant's confession was harmless error in regards to his criminal trespass conviction.

Appellant's conviction for misdemeanor criminal trespass must stand, therefore, unless appellant's speedy trial claim has merit. This Court employs the four-part balancing test set out in Barker v. Wingo (1972), 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101, to determine the validity of a speedy trial claim. State v. Bretz (1979), ____ Mont. ___, ___ P.2d ____, 36 St.Rep. 1037, 1040-41 (Cause No. 13826, decided June 13, 1979). In making the speedy trial determination, the Court considers the length of delay, the reason for the delay, the defendant's assertion of his speedy trial rights, and prejudice to the defendant. Bretz, 36 St.Rep. at 1041. None of these four factors is regarded as either necessary in all circumstances or sufficient in

and of itself to determine the deprivation of the right to a speedy trial. Rather, all must be considered together with other relevant circumstances. The Court must engage in a difficult and sensitive balancing process. Bretz, 36 St.Rep. at 1044-45.

Under the length of delay prong of the Barker test, the 249 days that passed between appellant's arrest and his trial shift the burden of explaining the reason for the delay and the absence of prejudice to appellant to the State. State v. Cassidy (1978), ____ Mont. ____, 578 P.2d 735, 738, 35 St.Rep. 612.

The reason for a majority of the delay--approximately six and one-half of the eight months--was the inability of the State to provide a judge to hear the case and the inadvertent scheduling of the trial for Labor Day. This constitutes unintentional delay and must be weighed less heavily than intentional delay in determining the validity of a speedy trial claim. Cassidy, 578 P.2d at 738. The remaining seven weeks of the delay followed appellant's motion for continuance and must be attributed to appellant.

Appellant met his burden of asserting the right to a speedy trial by taking affirmative action regarding the right, making a motion to dismiss for lack of a speedy trial between the time the matter was set for trial and the trial date. Cassidy, 578 P.2d at 739, citing State v. Steward (1975), 168 Mont. 385, 390, 543 P.2d 178, 182.

To ascertain the presence of the fourth element of the Barker test--prejudice to the appellant because of delay--we must consider the following interests of appellant: (1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety or concern of the accused; (3) limita-

tion of the possibility the defense will be impaired. Bretz, 36 St.Rep. at 1044, quoting Barker, 407 U.S. at 532. Here, appellant spent 43 days in jail before being released on bond, not an oppressive length of time. He faced a possible 40-year prison sentence. In Cassidy, we noted the defendant was charged with crimes carrying a possible 20-year prison sentence and said, ". . . [a]nxiety and concern on the part of defendant, under such circumstances and considering the 'death time' involved, can be presumed." Cassidy, 578 P.2d at 740. Under Cassidy, anxiety and concern on the part of appellant can be presumed. As to impairment of defense, none existed because appellant presented no defense.

Considering all these factors together, as we must to ultimately resolve this issue, we find the length of delay here barely exceeds the shortest delay previously held sufficient to trigger a speedy trial inquiry. The portions of the delay attributable to the State are institutional delays given less weight than intentional delays. Seven weeks of the delay can be imputed to appellant. Appellant only asserted his right to a speedy trial on one occasion. Appellant's proof of prejudice rests on judicial presumption rather than concrete evidence of actual harm through oppressive pretrial incarceration, anxiety and concern, or impairment of his defense. Given these facts, we do not ". . . find a showing of sufficient actual prejudice to invoke the extremely harsh remedy of dismissal of the cause." State v. Bretz, supra, 36 St.Rep. at 1045.

Appellant's conviction on the charges of felony theft and felony criminal mischief is reversed. The misdemeanor

criminal trespass conviction is affirmed and remanded to the District Court for sentencing on that matter.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

Mr. Chief Justice Frank I. Haswell, concurring in part and dissenting in part:

I concur in reversing appellant's convictions of felony theft and criminal mischief for the reasons stated by the majority. I dissent from the affirmance of appellant's criminal trespass conviction.

The majority hold that the admission of appellant's confession was harmless error insofar as his conviction of criminal trespass is concerned. The basis of the majority ruling is threefold: (1) the confession merely places appellant inside the J & L Tire building; (2) this evidence is merely cumulative; and (3) other evidence overwhelmingly shows appellant's guilt.

In my view the confession goes far beyond simply placing appellant inside the J & L Tire building. In his confession appellant stated that he and Dale Gladue ". . . went by J & L Tire in between the tire place and the other building. That coin laundry. There was a big hole in the garage door and glass was broken out on two sides. We looked in. We went to Sambo's, sat there and Dale said something about going back. I told him there was an alarm system in there. We went back through and took the coins off the desk and that is about it. That is when the policeman showed up."

The test of federal constitutional harmless error is "whether there is a reasonable possibility that the evidence complained of might have contributed to the convictions." Fahy v. Connecticut (1963), 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171. Or, stated another way, whether the error was harmless beyond a reasonable doubt. Chapman v. California (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

The elements of the crime of criminal trespass are a (1) knowing, (2) unlawful (3) entering into the premises of another. Section 45-6-203, MCA. The quoted part of the confession clearly establishes the first two elements of the crime. It is the only direct evidence of a knowing, unlawful entry. I cannot fairly say that there is no reasonable possibility that the inadmissible confession contributed to appellant's conviction or that the error was harmless beyond a reasonable doubt.

I would therefore remand for a new trial free from the taint of the unlawful confession.

                                    _Frank J. Haswell_
                                        Chief Justice